**IN THE CIRCUIT COURT OF DUPAGE COUNTY, ILLINOIS**
**LAW DIVISION**

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 20465617
2022LA001042
FILEDATE: 11/29/2022 12:21 PM
Date Submitted: 11/29/2022 12:21 PM
Date Accepted: 11/30/2022 8:32 AM
MM

Kenya Fort, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

Antech Diagnostics, Inc. and Vicar Operating, Inc. dba VCA,

*Defendants.*

Case No.:
2022LA001042

**CLASS ACTION COMPLAINT**

Plaintiff Kenya Fort ("Ms. Fort" or "Plaintiff") brings this Class Action Complaint against Defendants Antech Diagnostics, Inc. and Vicar Operating, Inc. dba VCA (collectively, "Antech" or "Defendants") to put a stop to its unlawful collection, use, disclosure, dissemination, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for Plaintiff's Class Action Complaint, allege as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

**NATURE OF THE ACTION**

1. Antech is a veterinary diagnostic and lab testing facility located in Oak Brook, Illinois.

2. Antech's location requires employees to scan their biometric identifiers, namely their fingerprints or hand geometry, as an authorization method to track their time worked.

3. Once a user has registered and scanned their fingerprint or hand geometry on an Antech biometric reader, that information is enrolled and retained in Antech's database(s) and

cloud-based system(s).

4. When individuals scan their fingerprint and/or handprint (collectively, "fingerprint") in an Antech's biometric time tracking system as a means of authentication, their biometric information and biometric data is transmitted to an Antech database.

5. Thereafter, the data is broadcast through Antech's software and web-based data collection and storage system.

6. While there are tremendous benefits to using biometric systems, there are also serious risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

7. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as handprints.

8. Despite this law, Antech disregarded individuals' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in violation of the BIPA. Specifically, Antech has violated (and continue to violate) the BIPA because it did not:

- Before collection, properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Before collection provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Before first collecting receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain handprints, as required by the BIPA.

- Before disclosure and dissemination, obtain consent from Plaintiff and Class members.

9. Accordingly, this Complaint seeks an order: (i) declaring that Antech's conduct

violates the BIPA; (ii) requiring Antech to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

10. Plaintiff is a natural person and citizen of the State of Illinois.

11. Defendants are foreign corporations, that conduct business in Illinois and has a registered agent in Illinois.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Antech because Antech conducted business and scanned Plaintiff's fingerprint and collected and stored Plaintiff's fingerprint data in Illinois.

13. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conducts business transactions in Illinois and have committed tortious acts in Illinois.

14. Venue is proper in DuPage County because Defendant operates throughout this County and "resides" in DuPage County within the meaning of 735 ILCS § 5/2-102(a).

## FACTUAL BACKGROUND

**I. The Biometric Information Privacy Act.**

15. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

16. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer

3

transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

17. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

18. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

19. BIPA specifically applies to employees and individuals who work in the State of

4

Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

20. Biometric identifiers include retina and iris scans, voiceprints, scans of fingerprints and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

21. The BIPA establishes standards for how private entities must handle an individual's biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

22. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II.     Antech Violates the Biometric Information Privacy Act.**

23. By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

24. However, Antech failed to take note of the shift in Illinois law governing the collection and use of biometric data despite that it had been in effect for over a decade. As a result, Antech continued to collect, store, use, and disseminate Illinois employees' biometric data in reckless and/or willful violation of BIPA.

25. Specifically, when individuals use Antech's biometric systems, they are required to have their fingerprints captured and stored to enroll them in ANtech's equipment, systems, and database(s).

26. Antech uses and supplies employee time tracking system that requires its clients' employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees must use their fingerprints to "punch" in and out of work on an Antech biometric system.

27. Upon information and belief, ANtech fails to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, Antech; fails to inform individuals who use its biometric systems that it discloses their fingerprint data to other, currently unknown third parties, which host the biometric data in their data centers; fails to inform individuals of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from individuals before collecting their fingerprints.

28. Upon information and belief, Antech fails to inform individuals that it discloses their fingerprint data to other, currently unknown third parties, which host the biometric data in their data centers; fails to inform individuals of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from individuals before collecting their fingerprints.

6

29. Furthermore, Antech failed to provide individuals with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

30. In addition, Antech profits from the use of individuals' biometric data collected at Antech facilities. Antech contracts with third-party vendors and partners that benefit from the time management services, software, and equipment that Antech provides. In turn, Antech receives a profit from the business arrangement(s).

31. The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long. Antech disregard these obligations and certain statutory rights and instead unlawfully collect, store, use, and disseminate biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

32. Upon information and belief, Antech lacked and failed to follow publicly-available retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with each company.

33. Since Antech did not publicly provide or publish BIPA-mandated data retention policies nor disclose the purposes for their collection of biometric data, individuals have no idea whether Antech sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told to whom any Antech currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

34. These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

35. By and through the actions detailed above, Antech disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**FACTS SPECIFIC TO PLAINTIFF**

36. Plaintiff performed duties for one of Antech's clients in Illinois.

37. The Antech equipment required Plaintiff to scan their fingerprints into a Antech biometric system so that the data could be uses it as an authentication method to track time. Antech subsequently stored Plaintiff's fingerprint data in its databases and transmitted the data using Antech's software.

38. Antech failed to first inform Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

39. Similarly, Antech failed to inform Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

40. Prior to providing biometric data, Plaintiff did not sign a written release allowing Antech to collect or store fingerprints.

41. Plaintiff was never informed nor consented to Antech's disclosure of their

8

fingerprint data between Antech's hardware and databases, or through any third-party software.

42. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Antech's violations of the BIPA alleged herein.

43. Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Antech has caused.

## CLASS ALLEGATIONS

44. **Class Definition**: Plaintiff brings this action on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All persons who had their fingerprints or handprints collected, captured, received, otherwise obtained, or disclosed by Antech while in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

45. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Antech has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Antech's records.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) whether Defendants collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

b) whether Defendants properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c) whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

d) whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

e) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f) whether Defendants comply with any such written policy (if one exists); and

g) whether Defendants used Plaintiff's and the Class' fingerprints to identify them.

47. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

48. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of

this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Antech's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Antech's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

49. Plaintiff and counsel will fairly and adequately protect the interests of the Class.

50. Plaintiff retained counsel experienced in complex class action litigation.

### CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

51. Plaintiff incorporate the foregoing allegations as if fully set forth herein.

52. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives

a written release executed by the subject of the biometric identifier or biometric information…."
740 ILCS 14/15(b) (emphasis added).

53. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

54. Unfortunately, Antech failed to comply with these BIPA mandates.

55. Antech qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

56. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Antech.

57. Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

58. Antech violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

59. Antech violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

60. Antech violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or

biometric information was being collected, stored, and used.

61. Antech violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its biometric identifiers and biometric information.

62. Antech systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

63. Antech also otherwise profited from biometric data collected at Antech's facilities in violation of 740 ILCS 14/15(c).

64. By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Antech violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

65. By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

66. Ultimately, Antech disregards individuals' statutorily protected privacy rights by violating the BIPA and did so knowingly or recklessly because the law has been in effect for over a decade and Antech exchange internal correspondence about biometric privacy law without taking additional steps to comply.

67. On behalf of themselves and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendants'

to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Antech's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate the BIPA;

C. Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Antech to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H. Awarding such other and further relief as equity and justice may require.

Dated: November 29, 2022       Respectfully submitted,

                                           Plaintiff**, individually and on behalf of all others similarly situated,**

                                           By: <u>/s/ Mara Baltabols</u>
                                                   One of Plaintiff's Attorneys

                                                   David Fish
                                                   Mara Baltabols
                                                   **FISH POTTER BOLAÑOS, P.C. (218726)**
                                                   200 East Fifth Avenue, Suite 123
                                                   Naperville, Illinois 60563
                                                   dfish@fishlawfirm.com
                                                   mara@fishlawfirm.com
                                                   docketing@fishlawfirm.com

                                                   *Attorneys for Plaintiff*

Insert text here