**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENYA FORT, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| v. | Case No. 1:23-cv-00367 |
| ANTECH DIAGNOSTICS, INC. and VICAR OPERATING INC., | |
| *Defendants.* | |

**DEFENDANTS ANTECH DIAGNOSTIC, INC. AND VICAR OPERATING INC.'S
ANSWER AND AFFIRMATIVE DEFENSES TO CLASS ACTION COMPLAINT**

Pursuant to Rules 8, 12, and 81 of the Federal Rules of Civil Procedure, and Local Rule 10.1, Defendants Antech Diagnostics, Inc. ("Antech") and Vicar Operating Inc. ("Vicar") (collectively, "Defendants"), by and through counsel, submits the following answers and affirmative defenses to Plaintiff Kenya Fort's Class Action Complaint ("Complaint") as follows:

**ANSWER TO CLASS ACTION COMPLAINT**

Alleged introduction paragraph: Plaintiff Kenya Fort ("Ms. Fort" or "Plaintiff") brings this Class Action Complaint against Defendants Antech Diagnostics, Inc. and Vicar Operating, Inc. dba VCA (collectively, "Antech" or "Defendants") to put a stop to its unlawful collection, use, disclosure, dissemination, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for Plaintiff's Class Action Complaint, allege as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

**ANSWER:** Defendants admit that Plaintiff has filed this lawsuit against Defendants on behalf of herself and the purported Class, but Defendants deny that this action can be maintained individually or on behalf of any Class, deny that Plaintiff or the proposed Class have any claims or legal rights under Illinois's Biometric Information Privacy Act ("BIPA") against Defendants, deny that Plaintiff or the proposed Class are entitled to any relief under BIPA, and deny any remaining allegations in this paragraph.

1

## NATURE OF THE ACTION

1.      Antech is a veterinary diagnostic and lab testing facility located in Oak Brook, Illinois.

**ANSWER:**  Defendants admit that Antech operates a veterinary diagnostic and lab testing facility located in Oak Brook, Illinois.  Defendants deny the remaining allegations of Paragraph 1.

2.      Antech's location requires employees to scan their biometric identifiers, namely their fingerprints or hand geometry, as an authorization method to track their time worked.

**ANSWER:**  Defendants deny the allegations of Paragraph 2.

3.      Once a user has registered and scanned their fingerprint or hand geometry on an Antech biometric reader, that information is enrolled and retained in Antech's database(s) and cloud-based system(s).

**ANSWER:**  Defendants deny the allegations of Paragraph 3.

4.      When individuals scan their fingerprint and/or handprint (collectively, "fingerprint") in an Antech's biometric time tracking system as a means of authentication, their biometric information and biometric data is transmitted to an Antech database.

**ANSWER:**  Defendants deny the allegations of Paragraph 4.

5.      Thereafter, the data is broadcast through Antech's software and web-based data collection and storage system.

**ANSWER:**  Defendants deny the allegations of Paragraph 5.

6.      While there are tremendous benefits to using biometric systems, there are also serious risks.  For example, if a fingerprint database is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

**ANSWER:**  Defendants deny the allegations in Paragraph 6.

7.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as handprints.

**ANSWER:**  The allegations in Paragraph 7 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

2

8. Despite this law, Antech disregarded individuals' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in violation of the BIPA. Specifically, Antech has violated (and continue to violate) the BIPA because it did not:

- Before collection, properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;
- Before collection provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor
- Before first collecting receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain handprints, as required by the BIPA.
- Before disclosure and dissemination, obtain consent from Plaintiff and Class members.

**ANSWER:** Defendants deny the allegations of Paragraph 8.

9. Accordingly, this Complaint seeks an order: (i) declaring that Antech's conduct violates the BIPA; (ii) requiring Antech to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

**ANSWER:** Defendants admit that Plaintiff has filed this lawsuit seeking the relief detailed in Paragraph 9 on behalf of herself and the proposed Class, but Defendants deny that this action can be maintained individually or on behalf of any Class, deny that Plaintiff or the proposed Class have any claims or legal rights under BIPA against Defendants, and deny that Plaintiff or the proposed Class are entitled to any relief under BIPA.

## PARTIES

10. Plaintiff is a natural person and citizen of the State of Illinois.

**ANSWER:** Defendants deny the allegations in Paragraph 10.

11. Defendants are foreign corporations, that conduct business in Illinois and has a registered agent in Illinois.

**ANSWER:** Defendants admit they conduct business in Illinois and have a registered agent in Illinois and otherwise deny the allegations of Paragraph 11.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Antech because Antech conducted business and scanned Plaintiff's fingerprint and collected and stored Plaintiff's fingerprint data in Illinois.

3

**ANSWER:** Defendants admit that Antech conducted business in Illinois, but deny that Antech scanned Plaintiff's fingerprint and collected and stored Plaintiff's fingerprint data in Illinois. The remaining allegations of this paragraph consist of legal conclusions to which no answer is required.

13. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conducts business transactions in Illinois and have committed tortious acts in Illinois.

**ANSWER:** Defendants admit that they conduct business in Illinois, but deny that they committed tortious acts in Illinois. The remaining allegations of this paragraph consist of legal conclusions to which no answer is required.

14. Venue is proper in DuPage County because Defendant operates throughout this County and "resides" in DuPage County within the meaning of 735 ILCS § 5/2-102(a).

**ANSWER:** Defendants admit that they operate in DuPage County. The remaining allegations of this paragraph consist of legal conclusions to which no answer is required.

## FACTUAL BACKGROUND

15. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

**ANSWER:** The allegations in Paragraph 15 consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Defendants admit that Paragraph 17 purports to quote from Section 5 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now

4

be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens.  The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

**ANSWER:**  The allegations in Paragraph 17 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 17 purports to quote from the Illinois House Transcript and Section 5 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

18.    The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

    (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

    (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

**ANSWER:**  The allegations in Paragraph 18 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 18 purports to quote from Section 15 of the BIPA, but Defendants refer to BIPA for its

complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

19.     BIPA specifically applies to employees and individuals who work in the State of Illinois.  BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment."  740 ILCS 14/10.

**ANSWER:**  The allegations in Paragraph 19 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 19 purports to quote from Section 10 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

20.     Biometric identifiers include retina and iris scans, voiceprints, scans of fingerprints and face geometry, and—most importantly here—fingerprints.  *See* 740 ILCS 14/10.  Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual.  *See id.*

**ANSWER:**  The allegations in Paragraph 20 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 20 purports to paraphrase from Section 10 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

21.     The BIPA establishes standards for how private entities must handle an individual's biometric identifiers and biometric information.  *See* 740 ILCS 14/15(c)-(d).  For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first.  740 ILCS 14/15(a).

**ANSWER:**  The allegations in Paragraph 21 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 21 purports to paraphrase from Section 15 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

22.     Ultimately, the BIPA is simply an informed consent statute.  Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data.  For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored.  Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored.  The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**ANSWER:**  The allegations in Paragraph 22 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 22 purports to paraphrase the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

23.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     However, Antech failed to take note of the shift in Illinois law governing the collection and use of biometric data despite that it had been in effect for over a decade.  As a result, Antech continued to collect, store, use, and disseminate Illinois employees' biometric data in reckless and/or willful violation of BIPA.

**ANSWER:**  Defendants deny the allegations of Paragraph 24.

25.     Specifically, when individuals use Antech's biometric systems, they are required to have their fingerprints captured and stored to enroll them in Antech's equipment, systems, and database(s).

**ANSWER:**  Defendants deny the allegations of Paragraph 25.

26.     Antech uses and supplies employee time tracking system that requires its clients' employees to use their fingerprint as a means of authentication.  Unlike a traditional timeclock, employees must use their fingerprints to "punch" in and out of work on an Antech biometric system.

**ANSWER:**  Defendants deny the allegations of Paragraph 26.

27.     Upon information and belief, Antech fails to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, Antech; fails to inform individuals who use its biometric systems that it discloses their fingerprint data to other, currently unknown third parties, which host the biometric data in their data centers; fails to inform

individuals of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from individuals before collecting their fingerprints.

    **ANSWER:**  Defendants deny the allegations of Paragraph 27.  Defendants deny that they collect "fingerprint data" and likewise deny that they "disclose[] . . . fingerprint data" or have an obligation to "inform individuals . . . . that [they] disclose[] . . . fingerprint data."

28.    Upon information and belief, Antech fails to inform individuals that it discloses their fingerprint data to other, currently unknown third parties, which host the biometric data in their data centers; fails to inform individuals of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from individuals before collecting their fingerprints.

    **ANSWER:**  Defendants deny the allegations of Paragraph 28.  Defendants deny that they collect "fingerprint data" and likewise deny that they "disclose[] . . . fingerprint data," have an obligation to "inform individuals of the purposes and duration for which [they] collect[]" fingerprint data, or have an obligation to "obtain written releases from individuals before collecting their fingerprints."

29.    Furthermore, Antech failed to provide individuals with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

    **ANSWER:**  Defendants deny the factual allegations of Paragraph 29.  Defendants deny that they collect or obtain fingerprints and likewise deny that they have an obligation to "provide individuals with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying fingerprints."  The remaining allegations in Paragraph 29 contain legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 29 purports to paraphrase or characterize the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

30.    In addition, Antech profits from the use of individuals' biometric data collected at Antech facilities.  Antech contracts with third-party vendors and partners that benefit from the time management services, software, and equipment that Antech provides.  In turn, Antech receives a profit from the business arrangement(s).

**ANSWER:** Defendants deny the allegations of Paragraph 30. Defendants deny that they collect "biometric data" and likewise deny that they "profit[] from the use of individuals' biometric data."

31. The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long. Antech disregard these obligations and certain statutory rights and instead unlawfully collect, store, use, and disseminate biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

**ANSWER:** Defendants deny that they "disregarded [BIPA's] obligations and certain statutory rights and instead unlawfully collect, store, use, and disseminate biometric identifiers and information, without ever receiving the individual's informed written consent." Further, the allegations in Paragraph 31 contain legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendants admit that Paragraph 31 purports to paraphrase or characterize the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31.

32. Upon information and belief, Antech lacked and failed to follow publicly-available retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with each company.

**ANSWER:** Defendants deny the allegations of Paragraph 32. Defendants deny that they collect or possess "biometric data" and likewise deny that they have an obligation to have and follow a publicly available retention and destruction schedule regarding the same.

33. Since Antech did not publicly provide or publish BIPA-mandated data retention policies nor disclose the purposes for their collection of biometric data, individuals have no idea whether Antech sells, discloses, re-discloses, or otherwise disseminates their biometric data.

9

Moreover, Plaintiff and others similarly situated are not told to whom any Antech currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

**ANSWER:** Defendants deny that they collect, possess, or disclose "biometric data" and likewise deny that they had an obligation to "publicly provide or publish . . . data retention policies nor disclose the purpose for their collection of biometric data." Defendants further deny that Defendants had an obligation to inform "Plaintiff and others similarly situated . . . to whom any Antech currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or bankruptcy." Further, the allegations in Paragraph 33 contain legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendants admit that Paragraph 33 purports to paraphrase or characterize the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33.

34. These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

**ANSWER:** Defendants deny the allegations of Paragraph 34. Further, the allegations in Paragraph 34 contain legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Defendants admit that Paragraph 34 purports to paraphrase or characterize the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

35. By and through the actions detailed above, Antech disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**ANSWER:** Defendants deny the allegations of Paragraph 35.

## FACTS SPECIFIC TO PLAINTIFF

36. Plaintiff performed duties for one of Antech's clients in Illinois.

**ANSWER:** Defendants admit that Plaintiff was employed by Antech in Illinois, and deny the remaining allegations of Paragraph 36.

10

37.     The Antech equipment required Plaintiff to scan their fingerprints into a Antech biometric system so that the data could be uses it as an authentication method to track time.  Antech subsequently stored Plaintiff's fingerprint data in its databases and transmitted the data using Antech's software.

**ANSWER:**  Defendants deny the allegations of Paragraph 37.

38.     Antech failed to first inform Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

**ANSWER:**  Defendants deny the allegations of Paragraph 38.  Defendants deny that they "collected, stored, or used fingerprints" and likewise deny that they had an obligation to inform Plaintiff of "the specific limited purpose or length of time for which [they] collected, stored, or used fingerprints."

39.     Similarly, Antech failed to inform Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

**ANSWER:**  Defendants deny the allegations of Paragraph 39.  Defendants deny that they collected or possessed "biometric data" or "fingerprints" and likewise deny that they had an obligation to "inform Plaintiff of any biometric data retention policy it developed" or "whether [they] will ever permanently delete fingerprints."

40.     Prior to providing biometric data, Plaintiff did not sign a written release allowing Antech to collect or store fingerprints.

**ANSWER:**  Defendants deny the allegations of Paragraph 40.  Defendants deny that Plaintiff "provid[ed] biometric data" and likewise deny that Plaintiff was obligated to "sign a written release allowing Antech to collect or store fingerprints."

41.     Plaintiff was never informed nor consented to Antech's disclosure of their fingerprint data between Antech's hardware and databases, or through any third-party software.

**ANSWER:**  Defendants deny the allegations of Paragraph 41.  Defendants deny that they collected, possessed, or disclosed "fingerprint data" and likewise deny that Defendants had an obligation to inform or obtain Plaintiff's consent to disclosure of such fingerprint data.

42.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Antech's violations of the BIPA alleged herein.

**ANSWER:**  Defendants deny the allegations of Paragraph 42.

43.     Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Antech has caused.

**ANSWER:**  Defendants admit that Plaintiff has filed this lawsuit seeking the relief detailed in Paragraph 43 on behalf of herself and the proposed Class, but Defendants deny that this action can be maintained individually or on behalf of any Class, deny that Plaintiff or the proposed Class have any claims or legal rights under BIPA against Defendants, and deny that Plaintiff or the proposed Class are entitled to any relief under BIPA.

## CLASS ALLEGATIONS

44.     **Class Definition**:  Plaintiff brings this action on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All persons who had their fingerprints or handprints collected, captured, received, otherwise obtained, or disclosed by Antech while in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:**  Defendants admit that Plaintiff has filed this lawsuit on behalf of herself and the purported Class defined in Paragraph 44, but Defendants deny that this action can be maintained individually or on behalf of any Class, deny that Plaintiff or the proposed Class have any claims or legal rights under BIPA against Defendants, and deny any remaining allegations in Paragraph 44.

45.     **Numerosity**:  The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable.  Antech has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of individuals who fall into the definition of the Class.  Ultimately, the Class members will be easily identified through Antech's records.

**ANSWER:**  The allegations of Paragraph 45 consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendants deny that this action

12

can be maintained individually or on behalf of any Class and deny any remaining allegations in Paragraph 45.

46.     **Commonality and Predominance**:  There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)   whether Defendants collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

b)   whether Defendants properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c)   whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

d)   whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

e)   whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)   whether Defendants comply with any such written policy (if one exists); and

g)   whether Defendants used Plaintiff's and the Class' fingerprints to identify them.

**ANSWER:**  The allegations of Paragraph 46 consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendants deny that this action can be maintained individually or on behalf of any Class and deny any remaining allegations in Paragraph 46.

47.     **Adequate Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.  Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so.  Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

**ANSWER:**  The allegations of Paragraph 47 consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendants deny that this action

can be maintained individually or on behalf of any Class and deny any remaining allegations in Paragraph 47.

48.     **Appropriateness**:  This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Antech's wrongful conduct.  Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Antech's misconduct.  Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER:**  The allegations of Paragraph 47 consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendants deny that this action can be maintained individually or on behalf of any Class and deny any remaining allegations in Paragraph 47.

49.     Plaintiff and counsel will fairly and adequately protect the interests of the Class.

**ANSWER:**  The allegations of Paragraph 49 consist of legal conclusions to which no answer is required.  To the extent an answer is deemed necessary, Defendants deny that this action can be maintained individually or on behalf of any Class and deny any remaining allegations in Paragraph 49.

50.     Plaintiff retained counsel experienced in complex class action litigation.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

51.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**  Defendants incorporate the foregoing answers to Paragraphs 1 through 51 as

though fully set forth herein.

52.     The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data.  Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first:  (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...."  740 ILCS 14/15(b) (emphasis added).

**ANSWER:**  The allegations in Paragraph 52 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 52 purports to quote from Section 15 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

53.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy.  Specifically, those companies must:  (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information.  *See* 740 ILCS 14/15(a).

**ANSWER:**  The allegations in Paragraph 53 consist of legal conclusions and argument to which no answer is required.  To the extent an answer is deemed necessary, Defendants admit that Paragraph 53 purports to quote from Section 15 of the BIPA, but Defendants refer to BIPA for its complete text and deny any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith

54.     Unfortunately, Antech failed to comply with these BIPA mandates.

**ANSWER:**  Defendants deny the allegations of Paragraph 54.

55.     Antech qualifies as a "private entity" under the BIPA.  *See* 740 ILCS 14/10.

**ANSWER:**  Defendants admit that they are corporations, which are included within BIPA's definition of a "private entity," but deny that the Complaint alleges any activity to which BIPA applies or that Defendant has violated any obligation under BIPA.  Further, the allegations

in Paragraph 55 consist of legal conclusions to which no answer is required.

56.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Antech.

**ANSWER:**  Defendants deny the allegations of Paragraph 56.

57.     Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA.  *See* 740 ILCS 14/10.

**ANSWER:**  Defendants deny the allegations of Paragraph 57.

58.     Antech violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

**ANSWER:**  Defendants deny the allegations of Paragraph 58.  Defendants deny that they "collected, used, and stored . . . biometric identifiers and biometric information" and likewise deny that they were obligated "to obtain written releases from Plaintiff and the Class" regarding the same.

59.     Antech violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

**ANSWER:**  Defendants deny the allegations of Paragraph 59.  Defendants deny that they "collected and stored" biometric identifiers and biometric information and likewise deny that they were obligated "to inform Plaintiff and the Class in writing" of the same.

60.     Antech violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

**ANSWER:**  Defendants deny the allegations of Paragraph 60.  Defendants deny that they "collected, stored, and used" biometric identifiers and biometric information and likewise deny that they had an obligation "to inform Plaintiff and the Class in writing of the specific purpose and length of term for which" they did so.

61.     Antech violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its biometric identifiers and biometric information.

**ANSWER**:  Defendants deny the allegations of Paragraph 61.  Defendants deny that they possessed biometric identifiers and biometric information and likewise deny that they had an obligation to "publicly provide a retention schedule or guideline for permanently destroying" the same.

62.     Antech systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

**ANSWER**:  Defendants deny the allegations of Paragraph 62.  Defendants deny that it collected or possessed biometric identifiers or biometric information and likewise deny that they "disclosed, redisclosed, or otherwise disseminated" the same.

63.     Antech also otherwise profited from biometric data collected at Antech's facilities in violation of 740 ILCS 14/15(c).

**ANSWER**:  Defendants deny the allegations of Paragraph 63.  Defendants deny that they collected biometric data and likewise deny that they "otherwise profited" from the same.

64.     By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Antech violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

**ANSWER**:  Defendants deny the allegations of Paragraph 64.

65.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA.  *See* 740 ILCS 14/1, *et seq*.

**ANSWER**:  Defendants deny the allegations of Paragraph 65.

66.     Ultimately, Antech disregards individuals' statutorily protected privacy rights by violating the BIPA and did so knowingly or recklessly because the law has been in effect for over a decade and Antech exchange internal correspondence about biometric privacy law without taking additional steps to comply.

**ANSWER**:  Defendants deny the allegations of Paragraph 66.

67.     On behalf of themselves and the Class, Plaintiff seeks:  (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendants' to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers

and biometric information as described herein; (2) liquidated damages for each of Antech's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:** Defendants admit that Plaintiff has filed this lawsuit seeking the relief detailed in Paragraph 67 on behalf of herself and the purported Class, but Defendants deny that this action can be maintained individually or on behalf of any Class, deny that Plaintiff or the proposed Class have any claims or legal rights under BIPA against Defendants, deny that Plaintiff or the proposed Class are entitled to any relief under BIPA, and deny any remaining allegations in Paragraph 67.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully request that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate the BIPA;

C.     Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Antech to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.     Awarding such other and further relief as equity and justice may require.

**ANSWER:** Defendants admit that Plaintiff has filed this lawsuit seeking the relief detailed in her Prayer for Relief on behalf of herself and the purported Class, but Defendants deny that this action can be maintained individually or on behalf of any Class, deny that Plaintiff or the proposed Class have any claims or legal rights under BIPA against Defendants, deny that Plaintiff or the proposed Class are entitled to any relief under BIPA, and deny any remaining allegations in the Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without admitting the sufficiency of the allegations of the Complaint and without assuming any burden of proof not placed on them by applicable law, Defendants assert the following affirmative defenses.  Defendants expressly reserve the right to raise additional defenses and

18

amend their affirmative defenses at any time, including and up to and at trial, based on all further investigations, discovery, and preparation for trial of this action.

### FIRST AFFIRMATIVE DEFENSE
**(No Possession or Collection of Biometric Identifiers or Biometric Information)**

Plaintiff's and the putative Class members' claims are barred because Defendants did not possess, collect, capture, purchase, receive through trade, or otherwise obtain Plaintiff's and/or the putative Class members' biometric identifiers or biometric information. Hence, Defendants have no liability under BIPA in this action.

### SECOND AFFIRMATIVE DEFENSE
**(No Negligent, Intentional, or Reckless Conduct)**

Plaintiff's claims are barred in whole or in part by Defendants' good faith and the absence of negligent, intentional, or reckless conduct. To the extent that BIPA applies to Defendants' conduct, Defendants are not liable because they relied in good faith upon a reasonable interpretation of BIPA's statutory language and took reasonable and good faith steps to comply with BIPA. Any alleged violation was not negligent, intentional, or reckless.

### THIRD AFFIRMATIVE DEFENSE
**(Consent)**

To the extent Plaintiffs allege that Defendants are liable because Plaintiff's and/or the putative Class members' biometric identifiers or biometric information was collected without their consent, Plaintiff's claims are barred in whole or in part because Plaintiff and/or the putative Class members consented to the conduct alleged to violate BIPA.

### FOURTH AFFIRMATIVE DEFENSE
**(Statute of Limitations)**

No damages or other relief can be recovered by Plaintiff and/or members of the putative Class to the extent Plaintiff's claims and/or members of the putative Class's claims are barred, in whole or in part, by an applicable statute of limitations. 735 ILCS 5/13-205 (five-year limitations period for "all civil actions not otherwise provided for"); *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 42 (holding that the five-year limitation period provided for by 735 ILCS 15/13-205

governs actions pursuant to the BIPA); *Cothron v. White Castle Sys.*, No. 20-3202, 2021 WL 5998537 (7th Cir. Dec. 20, 2021) (certifying the question of whether claims asserted under the BIPA accrue only upon the initial collection or disclosure of biometric information, or each time such information is collected or disclosed, to the Illinois Supreme Court). Upon information and belief, Defendants allege that Plaintiff and/or members of the putative Class failed to bring their respective claim(s) before this Court within the period required by the statute of limitations after their claims accrued.

### FIFTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiff and the putative Class members have failed to mitigate their damages, if any, and any recovery should be reduced or denied accordingly.

### SIXTH AFFIRMATIVE DEFENSE
### (Substantial Compliance)

Plaintiff's and the putative Class members' claims are barred because Defendants substantially complied with BIPA.

### SEVENTH AFFIRMATIVE DEFENSE
### (Waiver and Estoppel)

To the extent that Plaintiff and/or the putative Class members have continued to use the systems that they allege violate BIPA and upon which the Complaint is based, Plaintiff's and the putative Class members' claims are barred, in whole or in part, by the doctrines of waiver and estoppel. By continuing to use these systems after being on notice of how they allegedly function, Plaintiffs and members of the putative Class have waived their claims and/or are estopped from bringing them. The claims of Plaintiff and/or the putative Class members are also barred by waiver and estoppel to the extent Plaintiff and/or the putative Class members continued using the systems that they allege violate BIPA after the Complaint was filed because Plaintiff and/or the putative Class members were on notice that Defendants were allegedly collecting biometric identifiers or biometric information no later than the date the Complaint was filed.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Ratification and Acquiescence)**

Plaintiff's and the putative Class members' claims are barred in whole or in part by the doctrines of ratification and acquiescence. Upon information and belief, Plaintiff and the putative Class members approved of the complained-of conduct. Accordingly, they are barred from bringing their claims under the doctrines of ratification and acquiescence.

**DEFENDANTS' PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully pray for the following relief:

1. That Plaintiff recovers nothing by reason of her Complaint and that judgment be rendered in favor of Defendants;

2. That Plaintiff be denied class certification;

3. That Defendants be awarded its costs of suit incurred in defense of this action, including reasonable attorneys' fees; and

4. For other such relief as the Court deems proper.


Dated: February 10, 2023      **ANTECH DIAGNOSTICS, INC. AND VICAR OPERATING INC.**

By:     _/s/ Hyongsoon Kim_
       Attorneys for Defendants

**AKIN GUMP STRAUSS HAUER & FELD LLP**
HYONGSOON KIM (admitted _pro hac vice_)
kimh@akingump.com
KELSEY S. MORRIS (admitted _pro hac vice_)
kmorris@akingump.com
4 Park Plaza, Suite 1900
Irvine, California 92614
Tel:    949-885-4100

LAUREN E. HUENNEKENS (admitted _pro hac vice_)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, California 90067
Tel:    310-229-1000

**RILEY SAFER HOLMES & CANCILA LLP**
Joshua D. Lee, ARDC No. 6279235
jlee@rshc-law.com
70 W. Madison, Suite 2900
Chicago, Illinois 60602
Tel:    312-471-8700

*Attorneys for Defendants Antech Diagnostics, Inc. and Vicar Operating Inc.*